## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENYA WATKINS     )
   Plaintiff,    )  2:22-CV-02273
         )
GENESH INC., D/B/A BURGER KING )
   Defendant.   )

### COMPLAINT AND DEMAND FOR JURY TRIAL
### AND DESIGNATION OF PLACE OF TRIAL

   Plaintiff, Kenya Watkins, files this Complaint and Demand for Jury Trial and Designation of

Place of Trial against Defendant Genesh Inc., d/b/a Burger King ("Defendant" or "Burger King").

For her causes of action, Plaintiff shows the Court as follows:

### PARTIES

   1.  Plaintiff Watkins is a resident of Sedgwick County, Kansas.

   2.  Defendant, Genesh, Inc., d/b/a Burger King ("Burger King"), is a Kansas corporation

with its principal place of business in Lenexa, Kansas. Burger King may be served through its

registered agent for service of process, Genesh, Inc., 8831 Long Street, Lenexa Kansas, 66215.

   3.  Defendant Burger King is an "employer" within the meaning of Title VII and K.S.A.

§44-1001, et seq.

   4.  During calendar years 2015, 2016 2017, and 2018, for each working day during each

of 20 or more calendar weeks, Defendant Burger King employed over 15 employees in the State of

Kansas.

   5.  Defendant Genesh had at least 15 employees at all relevant times.

### JURISDICTION AND VENUE

   6.  This Court has original jurisdiction in this action pursuant to Title VII of the 1964

Civil Rights Act, 42 U.S.C. Section 2000e, 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section

1981 et seq. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f) and 28 U.S.C. Section 1391(b)(1). The Court may exercise jurisdiction over Plaintiff's state law claims, if any, under 28 U.S.C. Section 1367.

7.    Venue is proper in that Defendant is located within this District and the acts complained of took place within this District.

8.    Plaintiff filed Charges of Discrimination against Defendant Genesh that were timely and dually filed with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon sex and retaliation.

9.    Defendant was provided a copy of Plaintiff's Charges of Discrimination by the KHRC and the EEOC and given opportunities to respond.

10.    The aforesaid Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the KHRC and/or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

11.    On or about April 26, 2022, the EEOC issued Plaintiff her Notice of Right to Sue Letter pertaining to her complaint of discrimination on Charge 28D-2016-006190.

12.    A true and accurate copy of Plaintiff's Conciliation Failure and Notice of Right to Sue Letter dated April 26, 2022 is attached hereto as **Exhibit "A"**.

13.    Plaintiff has satisfied all private, administrative, judicial prerequisites to the institution of this action

## FACTS COMMON TO ALL COUNTS

14.    On or about December 11, 2013, District Manager swipes Female Hispanic Employee's behind with water bottle [3]. [1]

15.    On or about December 17, 2013, District Manager takes report from Female Hispanic Employee and watches surveillance video showing the incident on or about December 11, 2013 [3].

16.    On or about February 7, 2014, Female Hispanic Employee files charge with KHRC [3].

17.    On or about July 23, 2014, EEOC issues a Notice of Right to Sue Letter to Female Hispanic Employee [3].

18.    On or about August 1, 2014, General Manager tells Female African American Employee during her interview that she is a candidate for a managerial position [4].

19.    On or about September 29, 2014, Female Hispanic Employee files a federal lawsuit alleging sexual harassment [3].

20.    On or about November 15, 2014, General Manager tells a 15-year-old employee he wants her "young thick ass I am going to hit that when you turn 18".

21.    On or about December 1, 2014, General Manager tells a Female African American Employee "I want to wrestle with you" and "you know I want to get with your thick ass" [5].

22.    On or about December 1, 2014, General Manager repeatedly touches a Female African American Employee's behind [5].

---

[1] Plaintiff has used numbers to preserve the identities of each individual. Plaintiff's counsel will provide the names directly to defense counsel upon entry of appearance.

Plaintiff's Federal Complaint
*Watkins v. Genesh Inc., d/b/a Burger King.*

23.     On or about January 1, 2015, General Manager begins propositioning Female African American Employee for sex, touches her buttocks and vagina on multiple occasions, asks her to come to his house to have sex with him on many occasions, rubs his penis and asks her when he was "going to get some", tells her she makes him "so horny", comes to work without his belt on and tries to force her into the back room for sex, forces her into the back office attempts to touch her vagina and then smells his hand, and stands behind her and pretends to have sex from behind [4].

24.     On or about January 1, 2015, General Manager tells Female African American Employee that he would love to have sex with her, asks her to come to his apartment to sleep with him, says he could not wait for her to have her baby so that she could have his baby, and says that he would love to "taste" her [5].

25.     On or about January 24, 2015, District Manager asks Female Hispanic Employee to show her breasts [1].

26.     On or about February 1, 2015, Female African American Employee tells General Manager if he does not stop, she will report him [5].

27.     On or about February 1, 2015, General Manager forces Female African American Employee to take early maternity leave when she is 7 months pregnant, even though she is not having any complications [5].

28.     On or about February 26, 2015, Female Hispanic Employee submits intake questionnaire to EEOC [1].

29.     On or about April 2, 2015, Female African American Employee gives birth to child [5].

30.     On or about April 10, 2015, General Manager calls Female African American Employee at home while on maternity leave, says if she does not return by the end of April, she will be terminated [5].

31.     On or about April 26, 2015, General Manager terminates a Female African American Employee saying that he needs to lay someone off due to lack of sales during her shifts [2].

32.     On or about May 7, 2015, General Manager returns Female African American Employee to work 1 month after her baby because she cannot not afford to lose her job, but General Manager reduces her hours to 20 a week and schedules her while he is working [5].

33.     On or about May 10, 2015, Female African American Employee applies for unemployment benefits [2].

34.     On or about May 20, 2015, a customer, says "she ([5]) sure is sexy, thick, and has a nice smile", General Manager says "no she's all mine but I have another one for you". Customer responds "can we share her" [5].

35.     On or about May 29, 2015, Female African American Employee gives birth to twins [2].

36.     On or about June 8, 2015, Female African American Employee receives letter from KDOL that she is disqualified for unemployment benefits because Defendant says "she took leave to have her babies and never came back to work" [2].

37.     On or about June 16, 2015, General Manager files a Record of Counseling with the KDOL in Female African American Employee's unemployment appeal and states that he released her for maternity leave without consulting HR [2].

38.     On or about July 1, 2015, Female African American Employee complains to the corporate office about the sexual harassment after General Manager put penis into her back side [4].

39.     On or about July 1, 2015, General Manager tries to force Female African American Employee into the freezer to have sex with her. Later, when she is cleaning the parking lot, General Manager yells out the drive thru window "fuck this parking lot, come inside and let me play around in that pussy" [4].

40.     On or about July 1, 2015, General Manager touches Female African American Employee and begins questioning her about visitors at her house [5].

41.     On or about July 10, 2015, Female Hispanic Employee files KHRC/EEOC charge [1].

42.     On or about July 24, 2015, corporate office receives a complaint from Female African American Employee that General Manager is sexually harassing her and watching her house [5].

43.     On or about July 26, 2015, General Manager forces his hand into Female African American Employee's pants saying "I want to smell it" [4].

44.     On or about July 26, 2015, General Manager physically tries to have sex with Female African American Employee [4].

45.     On or about July 26, 2015, Female African American Employee calls 911 [4].

46.     On or about July 26, 2015, Genesh receives an Investigation Form from Female African American Employee [4].

47.     On or about July 27, 2015, Genesh receives a written complaint from Female African American Employee [5].

48.     On or about July 28, 2015, corporate representatives meet with Female African American Employee and tell her that General Manager is being replaced [4].

49.     On or about July 28, 2015, Genesh reduces Female African American Employee's hours [4].

50.     On or about July 28, 2015, Genesh contacts Female African American Employee about her complaint and tells her that it will investigate and get back to her [5].

51.     On or about July 28, 2015, Genesh meets with Female African American Employee then reduces her hours [5].

52.     On or about August 1, 2015, Genesh interviews General Manager. Shortly thereafter, Genesh moves the General Manager to its Rock Road location.

53.     On or about August 8, 2015, Genesh terminates Female African American Employee [5].

54.     On or about August 23, 2015, Genesh tells Female African American Employee that she is not on the schedule, then terminates her for no call/no show [4].

55.     On or about October 1, 2015, Genesh returns Female African American Employee to work at the Rock Road location [2].

56.     On or about October 1, 2015, General Manager begins making inappropriate comments to Female African American Employee, hits her on the buttocks, grabs her hair, makes numerous sexual comments, and touches her underwear when she bends over [2].

57.     On or about November 1, 2015, District Manager receives a complaint from Female African American Employee [2].

58.     On or about January 22, 2016, Genesh receives a resignation from Female African American Employee due to the General Manager's behavior [2].

59.     On or about October 13, 2016, Genesh submits position statement to the KHRC [4].

60.     On or about March 31, 2017, the KHRC interviews Female African American Employee [4].

61.     On or about April 13, 2017, Shift Manager begins sexually harassing Female Hispanic Employee. Shift Manager touches her buttocks. She reports the behavior. Genesh apologizes to Female Hispanic Employee and tells her to finish her shift [6]. Shift Manager learns that she complained and begins cussing at her. Female Hispanic Employee reports that she feels unsafe and is sent home [6]. Genesh tells her that she will not be scheduled to work with Shift Manager in the future.

62.     On or about April 14, 2017, Shift Manager is working when Female Hispanic Employee arrives at work [6].

63.     On or about April 14, 2017, Genesh writes up Female Hispanic Employee for insubordination [6].

64.     On or about April 14, 2017, Shift Manager tells Female Hispanic Employee "can't nobody talk to you because you're a police-calling ass bitch" [6].

65.     On or about April 14, 2017, Shift Manager left Female Hispanic Employee alone in the store - left the safe open, did not cash out, and open orders - had to act as the manager [6].

66.     On or about April 15, 2017, District Manager and Store Manager meet with Female Hispanic Employee. They review the video tape. The tape shows Shift Manager touching Female Hispanic Employee's hip but not her buttocks. District Manager tells Female Hispanic Employee that she is untruthful and they do not believe her [6].

67.     On or about April 15, 2017, Female Hispanic Employee goes to a police officer at a nearby QuikTrip to explain the situation and previous incidents with Shift Manager. The Officer takes statements from management at the Female Hispanic Employee's workplace [6].

68.     On or about April 21, 2017, Female Hispanic Employee was given a performance evaluation, rated 8/10 and given a raise [6].

69.     On or about April 25, 2017, Shift Manager begins sitting outside Burger King during Female Hispanic Employee's shifts [6].

70.     On or about May 4, 2017, Female Hispanic Employee texts her manager, tells him she was ill and would be late for work. He responds stating that he was not going to "put up with [her] bullshit". When Female Hispanic Employee gets to work, she is nauseous and gets sick. She is told to go home. When she leaves, Shift Manager is sitting in the parking lot [6].

71.     On or about May 5, 2017, Genesh terminates Female Hispanic Employee [6].

72.     On or about July 14, 2017, the KHRC interviews Female African American Employee [5].

73.     On or about October 20, 2017, a protest is held at a Genesh owned Burger King in Kansas due to allegations of race discrimination by a Store Manager. African American employee refuses to work for the same Store Manager. Defendant terminates the African American employee claiming no call/no show.

74.     On or about October 20, 2017, KHRC issues a Probable Cause finding in claims filed by Female African American Employee [4].

75.     On or about October 20, 2017, KHRC issues a Probable Cause finding in claims filed by Female African American Employee [5].

76.    On or about November 19, 2018, KHRC issues a Probable Cause finding in claims filed by Female Hispanic Employee [1].

## FACTS SPECIFIC TO PLAINTIFF WATKINS

77.    Plaintiff Watkins hereby incorporates by reference every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

78.    Plaintiff Watkins is an African American, black female.

79.    Between August 14, 2014 and August 23, 2015, Plaintiff Watkins was employed by the Defendant as a cashier/crew member.

80.    Plaintiff Watkins was paid $7.50 per hour.

81.    Plaintiff Watkins was told by the General Manager of the store, Michael Jackson, during her interview that she would be a candidate for a managerial position.

82.    General Manager Jackson assigned Plaintiff Watkins tasks and responsibilities that put her in close proximity with him.

83.    Plaintiff Watkins, while working for Defendant, was repeatedly verbally and physically harassed by General Manager Jackson.

84.    On multiple occasions, General Manager Jackson propositioned Plaintiff Watkins for sex.

85.    On multiple occasions, General Manager Jackson attempted to touch Plaintiff Watkins' behind.

86.    On multiple occasions, General Manager Jackson attempted to touch Plaintiff Watkins' vagina.

87.    General Manager Jackson asked Plaintiff Watkins to come to his house to have sex with him.

88.    Plaintiff Watkins rejected all of General Manager Jackson's advances.

89.    General Manager Jackson told Plaintiff Watkins that he was in charge of filling open managerial positions.

90.    General Manager Jackson told Plaintiff Watkins that she would not be promoted unless she had sex with him.

91.    General Manager Jackson would work without his belt on and his pants sagging.

92.    General Manager Jackson would rub his penis and ask Plaintiff Watkins when he was "going to get some".

93.    General Manager Jackson told Plaintiff Watkins that she made him "so horny".

94.    General Manager Jackson would try to make Plaintiff Watkins go into the back room to have sex with him.

95.    Plaintiff Watkins refused General Manager Jackson's requests for sex.

96.    Plaintiff Watkins was forced into the back office by General Manager Jackson who tried to put his hand in her pants.

97.    General Manager Jackson would try to touch Plaintiff Watkins' vagina and then leer at her while smelling his hand.

98.    On several occasions, when Plaintiff Watkins was working the drive-thru window, General Manager Jackson would stand behind her and pretend to have sex with her.

99.    On or about July 26, 2015, General Manager Jackson physically tried to have sex with Plaintiff Watkins.

100.    On or about July 26, 2015, Plaintiff Watkins called 911 to report General Manager Jackson for trying to force her to have sex with him.

101.    On or about July 27, 2017, General Manager Jackson forced Plaintiff Watkins into the backroom freezer and tried to have sex with her.

102.    On or about July 27, 2017, Plaintiff Watkins was outside cleaning the parking lot.

103.    On or about July 27, 2017, while Plaintiff was cleaning the parking lot, General Manager Jackson leaned out of the drive-thru window and said to Plaintiff Watkins, "fuck this parking lot, come inside and let me play around in that pussy".

104.    On or about July 27, 2015, Plaintiff Watkins complained to the corporate office, verbally and in writing, that General Manager Jackson was sexually harassing her and creating a hostile work environment.

105.    On or about July 28, 2015, after complaining to corporate and calling the police, Plaintiff Watkins met with corporate representatives to discuss General Manager Jackson.

106.    On or about July 28, 2015, Plaintiff Watkins was advised she would no longer have to work with General Manager Jackson.

107.    On or about July 28, 2015, Plaintiff Watkins was advised that General Manager Jackson was being replaced.

108.    Upon information and belief, General Manager Jackson attempted to change Plaintiff Watkins' schedule attempting to force her to work with him.

109.    After Plaintiff complained to corporate and called the police, Defendant cut the number of hours that Plaintiff Watkins typically worked.

110.    On or about August 22, 2015, Plaintiff Watkins worked her shift as scheduled.

111.     On or about August 22, 2015, the schedule for the following week had not been posted by the time Plaintiff Watkins' shift ended.

112.     On or about August 23, 2015, Plaintiff Watkins called Burger King and requested her schedule for the week, she was informed that she was scheduled for August 23, 2015.

113.     On or about August 23, 2015, Plaintiff Watkins was terminated for an alleged no call/no show.

114.     Upon information and belief, Defendant knew, or should have known, of the behavior of its managers and employees and it failed to take any action.

115.     Upon information and belief, Defendant has engaged in a pattern or practice of discrimination and retaliation against individuals that are female.

116.     Upon information and belief, Defendant has engaged in a pattern or practice of discrimination and retaliation against individuals that are African American.

117.     Upon information and belief, Defendant's actions were discriminatory and retaliatory as Plaintiff Watkins had a satisfactory employment record.

118.     Upon information and belief, Defendant opposed Plaintiff Watkins' request for unemployment benefits to retaliate against her for complaining about General Manager Jackson's unlawful behavior.

119.     In or around December 2018, Defendant contacted Plaintiff while she was working at her current employer, Cajun Operating Company d/b/a Church's Chicken ("Church's").

120.     Upon information and belief, the Owner of Defendant is friends with the Owner of Church's.

121.    Upon information and belief, Defendant also called Church's and told them that they should not have hired Plaintiff.

122.    Further, Defendant told Church's that Plaintiff was on drugs and that "everyone should stay away from her" because she filed a discrimination and harassment claim.

123.    By contacting Plaintiff's employer, Defendant has continued to retaliate against Plaintiff because of her complaints of discrimination, harassment, and retaliation and because she filed a Charge of Discrimination against them with the KHRC and EEOC.

124.    Defendant has engaged in a pattern or practice of discrimination based on sex.

125.    Defendant has engaged in a pattern or practice of discrimination and created a hostile work environment based on sex.

126.    Defendant would not have treated and does not treat similarly situated male employees in the same manner.

127.    By singling out Plaintiff Watkins, General Manager Jackson increased her feelings of isolation, which is consistent with stereotypes that black or minority women are "easy" or "oversexed".

128.    Defendant's decision not to take action to protect Plaintiff Watkins increased her feelings of isolation, and reinforced stereotypes that black or minority women are "easy" or "oversexed".

129.    Knowledge that sex is part of the decision-process that leads to less favorable treatment in an employer alters the working conditions for the affected employee in violation of law.

130.    Defendant understands, or should understand, that by choosing not to investigate Plaintiff's allegations of discrimination it allowed General Manager Jackson to continue discriminating and/or retaliating against Plaintiff and other employees.

131.    Defendant understands that providing fair discipline and promotion unconnected to a person's sex is an important part of providing a work environment that is equal and not abusive or hostile.

132.    Defendant understands that its female employees come to work every single working day subject to the power of a manager to alter their working conditions tied to negative perceptions of race and/or sex and because of that understanding expect their managers to exercise their authority without regard to race or other protected status.

133.    Defendant expects that its managers will not alter the working conditions of females and/or other minorities based on negative perceptions of any minority group.

134.    Defendant understands that a decision adverse to a female employee tied to negative perceptions of sex, by a person with continued supervisory power over that female employee can create an abusive work environment.

135.    Defendant understands that a decision to treat a female employee less favorably in any way connected to sex creates fear and threat of discipline and unfair treatment and alters the work environment more directly and more severely than use of sexual jokes or slurs.

136.    Defendant understands that a manager who uses his power to alter the work environment by engaging in decisions that adversely affect the enjoyment of the work environment by a female employee creates a work environment that is hostile and abusive.

137.    The social science research literature provides considerable evidence that those who claim discrimination are viewed negatively by others (they are seen as "troublemakers" and "complainers"), even when there is strong reason to believe that discrimination did indeed occur. Defensiveness and denial are common responses, and these may indeed lead to heightened negative treatment and distancing.

138.    Defendant violated public policy by engaging in discrimination and/or retaliation in violation of federal and state law.

139.    Manager Jackson, Plaintiff Watkins' General Manager, supervised and had the power to discipline Plaintiff Watkins.

140.    Plaintiff Watkins complained to Defendant's Human Resources and/or Defendant's corporate office.

141.    Plaintiff Watkins was ultimately terminated because Defendant's Human Resources and/or corporate office failed to meaningfully address her complaints of discrimination and retaliatory behavior by Manager Jackson.

142.    Defendant's termination of Plaintiff Watkins violates public policy by discouraging other employees from complaining about unlawful discrimination.

143.    The decision of Defendant to ignore the complaints of Plaintiff Watkins and to not even investigate her concerns suggests awareness of the practice and approval of the practice that would warrant the imposition of punitive damages.

144.    Plaintiff Watkins sought the benefits and protections of the Kansas Act Against Discrimination, Title VII and 42 U.S.C. Sect. 1981.

145.    Kansas Courts recognize that termination of an employee for exercising state and federally protected rights is unlawful.

146.    The decision of Defendant to terminate Plaintiff Watkins was unlawfully influenced by a desire to fire her as a result of her exercise of her rights.

147.    As a proximate result of Defendant's acts and omissions, Plaintiff Watkins has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, intimidation, insecurity, embarrassment, lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

148.    Plaintiff respectfully requests that this Court enter judgment against Defendant, for all actual, compensatory and punitive damages, all costs, all expenses and attorneys' fees incurred herein, and all legal and equitable relief requested in this complaint.

## COUNT I
## DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. SECTION 1981

149.    Plaintiff Watkins hereby incorporate by reference every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

150.    Defendant's discriminatory practices violated Plaintiff Watkins' rights to the full and equal enjoyment of all benefits, privileges, terms, and conditions of her employment.

151.    Defendant's creation of a hostile environment and the resulting discharge interfered with the rights to continued employment because of sex, race or because of protected activity in violation of 42 U.S.C. 1981.

152.    Plaintiff Watkins was discriminated against by Defendant based on her sex, which thereby impaired her contractual relationship with Defendant in violation of Section 1981.

153.    Plaintiff Watkins opposed the acts she believed in good faith violated Section 1981.

154.    Defendant illegally discriminated against Plaintiff Watkins with regard to the terms and conditions of her employment on account of her sex.

155.    Defendant retaliated against Plaintiff Watkins for opposing the acts she believed in good faith violated Section 1981.

156.    Plaintiff complained about the illegal discrimination and harassment and was subject to retaliation as a result of her complaints leading to her discharge from employment.

157.    At the time of terminating Plaintiff, Defendant was aware that she had made a complaint to the Police Department.

158.    At the time of terminating Plaintiff, Defendant was aware that she had made a complaint to the Defendant.

159.    Defendant acted with willful and wanton disregard for the equal rights of female employees who worked for Defendant and engaged in discriminatory and retaliatory practices with malice or with reckless indifference to the federally protected rights of aggrieved individuals

160.    As a direct and proximate result of Defendant's conduct, Plaintiff Watkins sustained and will continue in the future to sustain damages in the form of lost income, emotional pain, suffering, mental anguish, inconvenience and loss of enjoyment of life.

WHEREFORE, Plaintiff Watkins prays that this Court grant the following remedies:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of 42 U.S.C. Section 1981;

b.    Award Plaintiff all lost wages, past and future, to which she is entitled;

c.    Award Plaintiff compensatory damages;

d.      Award Plaintiff punitive and exemplary damages;

e.      Award Plaintiff reasonable attorney's fees, costs, and interest;

f.      Award such other relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF KANSAS ACT AGAINST DISCRIMINATION ("KAAD")

161.    Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

162.    Discriminatory and hostile conduct complained of constituted a continuing action from Plaintiff's date of hire to and after Plaintiff's termination.

163.    Defendant illegally discriminated against Plaintiff and subjected her to a hostile work environment based on her sex by way of offensive conduct, treatment, and termination.

164.    On information and belief, the adverse actions and resulting termination were retaliatory based on Plaintiff's complaint(s) of sexual harassment.

165.    Defendant's actions against Plaintiff were retaliatory in that after she engaged in activity protected under the KAAD, Defendant took tangible, adverse job actions against Plaintiff, including demotion and subsequent termination.

166.    Plaintiff was subjected to harassment, including, but not limited to, disrespectful treatment and degrading and humiliating comments, probation and demotion.

167.    All actions or inactions of or by Defendant occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

168.    Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of the Kansas Act Against Discrimination as alleged herein.

169.     Plaintiff's gender was a determining factor in Defendant's discriminatory conduct against Plaintiff in violation of the Kansas Act Against Discrimination.

170.     Plaintiff further believes that she was the victim of discriminatory conduct on the part of the Defendant that was ongoing and pervasive and constituted a "continuing violation" of her rights.

171.     As a direct result of the unlawful conduct of Defendant, as set forth herein, Plaintiff has suffered damages which include mental anguish, emotional distress, pain and suffering, a detrimental job record, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other nonpecuniary losses, all of a continuing and permanent nature.

172.     The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

173.     Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff Kenya Watkins respectfully prays that the Court find in favor of Plaintiff and against Defendant in the form of the order of this Court, for all actual, compensatory, and punitive damages, all costs, all expenses, and all attorneys' fees incurred herein, and all legal and equitable relief requested in this complaint.

**COUNT III**
**VIOLATION OF 42 U.S.C. §§ 2000e et seq. DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

174.    Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

175.    Plaintiff is female and thereby a member of a protected class.

176.    Plaintiff was covered by Title VII because of her sex.

177.    Plaintiff was subjected to severe, pervasive, and unwelcome sex discrimination by subjecting Plaintiff to unlawful sex harassment.

178.    Plaintiff was subjected to a hostile work environment based on sex.

179.    The sex discrimination to which Plaintiff was subjected affected a term, condition, or privilege of Plaintiff's employment because the conduct was continuous, outrageous, humiliating, and unreasonably interfered with Plaintiff's ability to perform the functions of her employment.

180.    Plaintiff's sex was a motivating or determining factor in the severe and pervasive discrimination to which Plaintiff was subjected.

181.    Defendant was aware of the sex discrimination to which Plaintiff was subjected.

182.    Defendant failed to take prompt and appropriate corrective action to end the discrimination to which Plaintiff was subjected.

183.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

184.    Defendant failed to make good faith efforts to establish and enforce policies to prevent

illegal discrimination against their employees, including discrimination based on sex.

185.    Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

186.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on her sex in violation of Title VII.

187.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived income as well as other monetary and non-monetary benefits.

188.    As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff have suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

189.    By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

190.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other employees from like conduct in the future.

191.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable attorney's fees from Defendant.

WHEREFORE, Plaintiff Kenya Watkins requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and the value of lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable

attorney's fees and costs incurred herein; for pre-judgment and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF 42 U.S.C. §§ 2000e et seq. RETALIATION

192.    Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

193.    Plaintiff complained of sexual harassment to Defendant.

194.    Reporting sexual harassment and/or discrimination is a protected act.

195.    Plaintiff made good faith reports of sexual harassment and a good faith report of retaliation and thereby engaged in protected activities.

196.    In choosing to not take prompt and appropriate corrective action to end the sex discrimination and harassment to which Plaintiff was subjected, Defendant subjected Plaintiff to treatment that made Plaintiff's work uncomfortable.

197.    Defendant's decision to terminate Plaintiff's employment was motivated by her complaint(s) of sex discrimination and/or retaliation.

198.    Plaintiff's participation in protected activities was a motivating or determining factor in Defendant's decision to not take prompt and appropriate corrective action to end the sex discrimination to which Plaintiff was subjected.

199.    At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

200.    Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees, including sex discrimination.

201.    Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

202.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on her sex, in violation of Title VII.

203.    As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived income as well as other monetary and non-monetary benefits.

204.    As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff have suffered humiliation, mental anguish, and pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

205.    By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

206.    As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other employees from like conduct in the future.

207.    Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable attorney's fees from Defendant.

WHEREFORE, Plaintiff Kenya Watkins requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and the value of lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable

relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorney's fees and costs incurred herein; for pre-judgment and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### PRAYER

As a result of the discrimination and retaliation, Plaintiff Kenya Watkins has been damaged, sustaining economic loss as well as humiliation, embarrassment, and emotional distress, and for sure, as a proximate result of Defendant's termination of Plaintiff, her reputation as a faithful, hardworking, loyal and diligent employee has been irreparably damaged.

The discriminatory and retaliatory conduct of Defendant, including the termination of Plaintiff, constitutes a willful, wanton and malicious act.

WHEREFORE, Plaintiff prays for judgment against the Defendant in excess of $75,000 for:

   a.   Back pay and value of benefits from date of constructive discharge;

   b.   Future loss of pay and fringe benefits from date of constructive discharge;

   c.   Compensating damages for the loss of Plaintiffs reputation;

   d.   Damages for mental anguish, humiliation and embarrassment;

   e.   Any other damages allowed by law;

   f.   Punitive damage;

   g.   Attorney fees, cost of this action, and for such other and further relief as the court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff Watkins hereby requests a trial by jury on all claims so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff Watkins designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ Aaron C. McKee

Aaron C. McKee                                KS# 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com
**ATTORNEY FOR PLAINTIFF**